We'll move to our next case this morning, Nalini Bidani v. Robert Wilkie. Good morning, Your Honor. Hold up one minute so everyone can get seated here. Sorry, she was there already. I apologize, Your Honor. Alright, go ahead. May it please the Court. My name is Philip Holloway. I represent Dr. Nalini Bidani and her appeal. As most employment law practitioners, as well as most judges, including the panel here, understand, discrimination and retaliation suits often turn on whether the defendant's proper non-discriminatory reason is pretextual. In other words, is it worthy of credence? This case is no different. The agency claims that it terminated Dr. Bidani on March 20, 2017, for three reasons. The first of those was performance. The second, her attendance. And the third was conduct unbecoming for a single incident that happened on February 10, 2017. With respect to performance, the key facts here are that on October 31, 2016, Dr. Solomon, who was the proposing official, awarded Dr. Bidani a 95% performance bonus, which was 95% of the maximum performance bonus. Before you go any further on the pretext question, if we could just clarify what's at issue or what remains at issue. I believe it's just the retaliation claim. Correct, Your Honor. And the protected activity that forms the basis for the retaliation claim comes in two forms. One is the complaint that she raised about how she was being treated with regard to her sick leave during the fact-finding proceeding that her supervisor held, if I'm recalling the record correctly. And then the second category of protected activity would be the formal EEOC complaint. Those are still live issues? That is correct, Your Honor. Okay. So let's talk about why each of those would be protected activity. Clearly, the EEOC formal complaint would be protected activity. I think there's a debate about whether the things that she said during that fact-finding hearing about being harassed for her sick leave was a complaint about discrimination based on disability. Well, that's the February 17, 2017 fact-finding. They addressed a number of issues, one of which was an altercation that occurred between Dr. Badani, alleged between Dr. Badani and Dr. Ramirez. And also, unbeknownst to the plaintiff prior to the meeting, Dr. Badani prior to the meeting, the issue of her sick leave was raised. And it is our contention, appellant's contention, that her statements during that meeting to Dr. Ramirez and Dr. Solomon constitute a protected activity because she linked the issue with sick leave, so-called sick leave abuse, directly to her various medical conditions, which she lists and states in writing in the record, which we've repeated in the briefs. And it's our contention that that is protected activity because she placed Dr. Solomon and Dr. Ramirez on notice that she was complaining about their treatment of her based on her conditions. Now, there were other exchanges between the parties during that fact-finding meeting that may not be considered protected activity, but there's nothing in the law that says you can't complain about other things or other factors alongside disability discrimination in order for it to constitute protected activity. And the agency points out that our client didn't engage in protected activity on February 17, as of the district court, because she didn't say or explicitly bring in disability as a reason. And as we point out in our reply, protected activity regarding disability is of a different color, a different nature than that regarding race or gender. This court has said several times that the plaintiff or prospective plaintiff doesn't have to use And that would apply with more strength with respect to disability because, again, as we point out in our argument, the term disability is a legal term of art that lawyers understand, that judges understand, but the general public doesn't really know what that means. They would just go to their employer or the general public that's an employee would go to their employer and say, look, you're messing with me because I'm sick all the time or you're doing this to me because I'm ill all the time or because I have migraines or because I have, you know, I'm using a wheelchair, you're holding that against me. Regular people don't know to say you're doing this to me because I'm disabled. Now, most people would know to say you're treating me this way because I am a woman or because I'm African American because those are, you know, fairly lay people who understand that. So that's why it's our position that her comments to Dr. Bermudez and Dr. Solomon on that date constitute objective activity. Can I ask you a question about another aspect of that meeting? Is there any evidence that would permit a finding that Mark McGill, he's the fellow that ultimately conveyed the termination, right? Did he, was he aware of what transpired during the February, I know he wasn't present for the meeting, but what's the evidence show with respect to his awareness of what transpired during the meeting? The evidence file contains the transcript, the evidence file which is at record 77-4, 8-76, 10-26, contains the transcript that I'm referring to of the exchange between the doctors during that meeting. So he would have been aware after reviewing the evidence file of what happened at that meeting just by reviewing the transcript. Okay, and is the record clear that this transcript from that fact-finding meeting, was that, is it clear that that was part of the evidence? It is, Your Honor. Okay. Mr. Holloway, looking at the transcript of that, or the record of that meeting, I think the, you seem to be pointing to the statement where Dr. Biondi says there's been a pattern of harassment about sick leave. I'm just trying to get some clarification. Is she, does your client believe that she was being harassed because she took too much sick leave, or was she harassed in that her supervisor did not believe that she was actually sick when she was taking the leave? And if it's, and does that distinction matter in your mind? I don't believe it matters, but I would, to answer your question, I would say it's both. My client is complaining both that, and mind you, this is not just a one-off event between the two parties, between Dr. Solomon and Dr. Biondi. This had been going on for several years, beginning in 2013, where Dr. Solomon complained about my client needing an accommodation for using, not using a lead apron because of her sciatica or other medical conditions. So this is a long-running issue between the two of them, and it's our position and our client, at that point during that meeting felt and communicated to Dr. Solomon and Dr. Biondi that she was being singled out because of her use of sick leave, which, of course, as she pointed out, was because of her several sometimes debilitating health conditions. What is your best evidence with regard to your position that the EOC complaint was something that caused or contributed to the termination?  Well, first off, our client filed her formal complaint five days after the February 17 fact-finding and then filed her formal, or at least the evidence isn't completely clear as to when Dr. Solomon learned of this complaint, but it was at the very least no later than October 10th, which is the same date that the mysterious October 10th letter that didn't result in my client being terminated. There's another one that was drafted on March 20th. That's one factor in that. Well, another factor is also that Dr. or sorry, Mr. McGill, Director McGill, just on February 16th, 2017, had awarded or signed off on the October 31st performance bonus. And then after he notices or has received notice of her, of Dr. Radani's complaint, turns around and fires her because of performance without any evidence or any data in the evidence file presented to him regarding any negative performance or attendance issues. And I would like to reserve the last minute of my time for rebuttal. That's fine. Thank you. Ms. Yoon. Good morning. Lisa Yoon representing APALE, the Secretary of the VA. May it please the Court. This case is about the VA's termination of Dr. Radani after four years of subpar job productivity, spotty attendance, and poor attitude, and four years of repeated counseling by her supervisor, Dr. Carol Solomon. Then, Radani instigated an altercation with another supervisor that resulted in an official administrative investigation. Because all of this occurred well before Radani filed an EEO complaint on February 22nd, 2017, no reasonable jury could find that she was terminated because of it. I want to emphasize two key points that could resolve this appeal. First, complaints about general mistreatment and sick leave do not constitute protected activity as a matter of law. And second, Solomon's termination recommendation and the evidence file were complete and out of her hands before she found out about Radani's EEO complaint. The first point relates to the official administrative investigation. Because the timing of the EEO complaint failed to support Radani's retaliation claims, she asserts that she engaged in protected activity during a February 17th, 2017, fact-finding meeting. That meeting was part of an investigation into Radani's conduct several days earlier when there was an altercation between Radani and a supervisor, Dr. Miriam Bermudez, that involved Radani yelling at Bermudez. At that meeting... So, Ms. Yun, I'm sorry to interrupt, but the... You know, when I look at this record, and we're, of course, here on summary judgment, right, which means that all reasonable inferences should be drawn in the non-movement's favor. And I look at these letters that Solomon wrote on February 24th, 2017 and March 16th, 2017 with regard to concerns about sick leave, right? Yes, sir. And then I look at Solomon's affidavit that says that basically, right, he decided that termination was appropriate basically immediately after the February 17th meeting. And yet the letters that are dated after that do not mention termination. In fact, Solomon says, you know what, this is a continuing issue that you need to address, and we're going to revisit this issue in September. And so how are we to reconcile those kind of disputed issues on this record? Your Honor, I would submit that they aren't disputed issues. The letters are what they are. However... Well, the letters contradict what Solomon said in his affidavit, right? So Solomon said that, you know, after the meeting, I determined that we need to terminate Dr. Badani based upon those three things. And then yet in a subsequent letter, when he mentions one of those three things, there's no mention of termination at all. So one key fact that's important here is that Solomon did not have the authority on her own to terminate Badani. So she has to ask Badani's direct supervisor. Right. But even if Solomon didn't have the direct authority, one would think that, and let's say was going to recommend the termination, one would think that a subsequent letter would at least refer or mention that that was a potential. Your Honor, the government would respectfully disagree with that. To give someone who might actually be a colleague notice that you are trying to fire her at that early juncture when she did not know that her recommendation was going to go through and be approved, that is not a reasonable inference to make. Also, kind of looking at it big picture, she did say that she issued the February 13th letter and then reissued it later to make sure it was part of the file. And the record is really undisputed that all this activity is happening before she finds out about the EEO complaint. And going back to that point, Appellant's attorney said that it's not clear in the record that the date that she found out about, or that she found out about the EEO complaint. However, it is actually really crystal clear in the record. Badani states that the director of the VA, Mark McGill, received the evidence file between March 6th and March 10th. And then Solomon, for her part, was not notified until Badani's EEO complaint until March 10th. Any suggestion to the contrary in the reply brief is simply incorrect. The record is very clear on that. It is actually part of the district court briefing. And it's one of plaintiff's, in that matter, plaintiff's proposed facts. So all of this activity is happening. She does not know about the EEO complaint. And so what we're talking about here is when was Solomon made aware? She has always been kind of set forth as the bad actor here, the one with discriminatory or retaliatory animus. When was she aware that Badani was making such a complaint and, you know, what her actions were? And you don't think she was aware when Badani, during that meeting, said that you were harassing me for sick leave? That's a good question. No, Your Honor. It's not. So at that meeting, Badani complained that she was harassed by Solomon. Specifically, she was saying that Solomon harassed her for her sick leave, for her productivity, for her RVU numbers, and generally efforts to supervise her. But this court has held that complaints about sick leave and the discussion of health conditions in the context of sick leave do not constitute or do not implicate disability, retaliation based on disability. So in her reply brief, Badani tries to distinguish McHale by saying, oh, I actually listed out my health conditions, whereas the plaintiff in McHale said that she suffered from several very serious health conditions. But it's not the identification. It's not the magic words. That's not the issue. What is important is the assertion that something happened because of the disability. So the court in McHale explicitly stated that the charge, whether formal or informal, must be about the discrimination and the complaint must indicate that discrimination happened because of a protected class. When you look at the meeting transcript, Badani simply was not saying that Solomon was harassing her because she was disabled. That is at the district court record 77-40. You don't think that it's even possible for a jury to construe that transcript otherwise? No, Your Honor. Because she's linking before she complains about being harassed on the basis of the use of sick leave, she's itemizing her health conditions, and she's emphasizing that the sick leave I took was because I'm sick. So as in McHale, yes, she's itemizing them, but the prompt, the question is she's responding to why she's taking sick leave. So she is talking about her sick leave usage, which necessarily will always 100% of the time, when there's a meeting about sick leave, someone asks you why you're taking sick leave, there's going to be presumably— But the very fact that we have to have a dialogue about what inferences to draw from it, doesn't that suggest it's a jury question? No, Your Honor. I think it's very clear here, just like in McHale, that there was no indication that Solomon was saying— that Bedanyi was saying that Solomon was harassing her because of her disability. She was saying that Solomon was harassing her for general supervisory efforts about productivity, RVUs, and sick leave. And I will say also— But, you know, what if she had said there's been a pattern of harassment about sick leave that I've taken because of my hypertension, high cholesterol, and kidney stones, degenerative disease? Your Honor— Would that be different? Just so I have it clear, so if Bedanyi were to say there's harassment based on my sick leave use for these particular reasons— Yes. No, Your Honor, that wouldn't be different. There really has to be a— And this is why the formal charge is so clearly—the formal EEO charge is so clearly notification of, hey, I'm asserting my rights here, that you are violating my rights because of my disability. They're talking about an administrative-type complaint. Like, you know, I'm taking sick leave for these reasons. You're harassing me. It's very clear that the harassment that she was complaining of has to do with her taking sick leave, but actually more specifically the pattern of sick leave that she was taking, as well as other issues. She talked about her productivity, RVUs, and just generally efforts to supervise her. And I do want to go back to if the court were to find, which the government disagrees with, that it's not clear that she was not alleging—she simply was not alleging that she was being harassed because she was disabled. But even if the answer was not in the government's favor on that point, the only argument that appellant has is that timing alone, because Solomon has stated that she made that decision right after that meeting, timing alone shows the retaliation. We actually have to then consider the three reasons that the VA has put forth, the three legitimate non-discriminatory business reasons that the VA has put forth for Bedani's termination. And the VA identified these with specificity and citation to the record. There's performance, attendance, and misconduct issues. And Bedani must refute each one individually. Isn't attendance just a proxy for what we're talking about, misuse of sick days? Yes, attendance issues, exactly. So it just circles back to the same dialogue we've just been having. No, I believe that we still have to look at, was this a genuine reason why Solomon decided to terminate Bedani? Again, and we're talking about a concerning pattern of sick leave that dates back to 2013. So it's easy to kind of zoom in on that short period, but we are talking about a history that's documented of her misuse of sick leave, as well as her performance issues and her productivity issues. So all of these issues, the conduct and attendance issues, are in the evidence file. My apologies, I didn't realize my time had run out. And the productivity issues are certainly not in the evidence file, but there's nothing actually about performance or productivity. But Solomon was aware of Bedani's issues as her direct supervisor, and the termination originally was Solomon. There was enough evidence in the evidence file for McGill to approve. So there's no evidence that the termination was retaliatory. If this court has no further questions, the government will rest in its brief and respectfully request that the court affirm the district court. Thank you. Thank you. Mr. Hathaway. As much time as I have left, I'd like to address three points. The agency's counsel argued that there was a history of documented attendance. However, that history ends on November 18, 2016. That is the last sick day that's referenced in any document in the record, period. It's also eight days, four days, I'm sorry, before Dr. Solomon recommends my client be reapproved for employment for two more years. So if it wasn't worthy of discipline on November 22nd, instead it was worthy of being re-upped for two more years, then it shouldn't have been worthy of discipline after our client engaged in protected activity in March of 2017. I have a question about the evaluation of the protected activity here, the complaint about the harassment for her sick leave during that fact-finding meeting, which is the first category of protected activity being asserted here. From whose vantage point is that evaluated for reasonableness, from the vantage point of the speaker or the vantage point of the supervisor who heard the complaint? The standard is that a reasonable person would have recognized it as a complaint about disability. Right, it would have to be, under the law, it would have to be the listener. In this sense, Dr. Solomon. Okay, so what's your best argument that a reasonable person in Dr. Solomon's position would have recognized this as a complaint about disability rather than a complaint about the truth of her use of sick leave? It goes back to my argument I made originally in response to Justice Lee's question that most people, when they engage in this sort of dialogue, we know what someone's talking about when someone's speaking to us, and her actions after that. Yeah, but this is a little more complicated because it concerns the use of sick leave and the allegation that was being leveled at her repeatedly over the course of several years  when she didn't need it, when she wasn't actually sick. So it was a complaint about her truthfulness in taking sick leave rather than what she was taking it for, if you understand the distinction that I'm driving at here? I understand the distinction, but I would say that, and I believe that Dr. Solomon pointed out in her deposition, that she approved every one of those sick leaves. So it wasn't a question of truthfulness, it was just a question of use, period. And that's what my client was complaining about. Okay, I think I understand the argument now. Thank you, and we'd ask that the court remand. Thank you very much. Thank you. Thanks to both counsel, the case is taken under advisement.